UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

STEPHANIE BALE,

                              Plaintiff,

  -v-

CARLO F. NASTASI and MARGARET M. NASTASI,

                              Defendants.

Case No. 11-CV-4042 (KMK)

OPINION AND ORDER

---

KENNETH M. KARAS, District Judge:

    Plaintiff Stephanie Bale ("Plaintiff") was the passenger in a car that was rear-ended by a car driven by Defendant Margaret Nastasi. Plaintiff alleges the accident caused various injuries, and Plaintiff has sued for money damages. The Parties conducted discovery, and Plaintiff now moves for partial summary judgment on the issue of liability. For the reasons stated below, Plaintiff's motion for partial summary judgment is denied.

I. Background

A. Facts

    1. Overview

    On Friday, June 26, 2009, at approximately 4:30 pm, a 2008 Jeep Laredo, owned by co-Defendant Carlo Nastasi ("Carlo") and operated by his wife, Defendant Margaret Nastasi ("Defendant"), rear-ended a 2005 Grand Caravan owned by Plaintiff and operated by her sister, Tracy Pettit ("Pettit"). (*See* Nastasi Dep. 4:22–25, 5:2–16, 6:21–25, 8:19–21; Bale Dep. 8:13–21, 9:4–8, 15–19.) Both vehicles were traveling south on New Jersey's Garden State Parkway ("the Parkway"). Plaintiff was a passenger in her own vehicle, and she and Pettit were

on their way to Atlantic City, New Jersey for the weekend. (*See* Bale Dep. 9:4–6, 20–21; Pettit Dep. 5:14–19, 9:8–10, 11:4–10.) Defendant was alone in the car owned by her husband Carlo, and she was headed south to see her brother. (*See* Nastasi Dep. 5:4–12, 6:3–5, 8–10, 18–20, 20:17–25.)

The weather was clear, dry, and sunny. (*See* Bale Dep. 8:20–25, 9:2–3; Pettit Dep. 32:11–21.) But, as might be expected on a summer Friday afternoon, traffic was "heavy," "stop and go," and "bumper to bumper" immediately preceding the accident, according to the depositions. (*See* Pettit Dep. 12:2–7; Bale Dep. 15:6–8; Nastasi Dep. 7:23–25, 20:10.) Defendant testified that, during this traffic jam, she saw Plaintiff's vehicle for the first time approximately one mile before the site of the accident. (*See* Nastasi Dep. 8:2–8:18.) At that point, Defendant's vehicle was in the same lane of traffic as Plaintiff's vehicle, with Defendant one car behind Plaintiff. (*See id.*) Neither Plaintiff nor Pettit recalled being specifically aware that Defendant was behind them before the accident. (*See* Pettit Dep. 15:18–20; Bale Dep. 16:2–4.)

At approximately 4:30 p.m., as the cars crept southward on the Parkway, Defendants' car rear-ended the car in which Plaintiff was a passenger. The differing accounts of the critical seconds preceding the collision are analyzed in detail below. But everyone agrees about what happened immediately after the accident: Plaintiff and Defendant exited their respective vehicles, engaged in discussion, and agreed to call the police. (*See* Nastasi Dep. 11:19–25, 12:2–14; Bale Dep. 27:7–13.) The telephone operator instructed the Parties to move their vehicles over to the right shoulder of the Parkway to wait for the police. (*See* Nastasi Dep. 12:2–6; Bale Dep. 28:8–24.) When the police arrived, Defendant told the officials that Plaintiff's vehicle suddenly stopped in front of her, that Defendant applied her brake, and that

there was "just impact, slight impact." (Nastasi Dep. 12:18–21.)  In her deposition, Defendant could not specifically remember whether she told the police that she "took [her] eyes off the road for a second and hit into [Plaintiff's vehicle,]" but the New Jersey Police Crash Investigation Report in the record reveals that Defendant did say this to the police.  (Nastasi Dep. 15:12–22; *see also* N.J. Police Crash Investigation Report, Dkt. No. 3-1.)  Plaintiff, in her deposition, did not recall exactly what she told the police when they arrived.  (*See* Bale Dep. 29:12–14.)

Plaintiff received no medical assistance at the scene of the accident, and was not taken to the hospital.  (*See* Bale Dep. 31:5–12, 32:2–11.)  After concluding their interaction with the police, Plaintiff and Pettit continued southbound in their vehicle to Atlantic City, where they stayed until Sunday, June 28, 2009.  (*See* Bale Dep. 31:22–25, 32:3–5.)

2. The Crash

As explained further below, resolving Plaintiff's summary judgment motion turns on what occurred in the critical few seconds before impact.  And exactly what happened is in dispute.  Specifically, the following material facts are disputed: (i) how fast Pettit was driving before the accident; (ii) whether Plaintiff's vehicle came to a gradual or an abrupt stop; (iii) the amount of time that elapsed between Plaintiff's vehicle coming to a stop and the impact; (iv) the force of the contact between the vehicles.[1]

a. The Rate of Speed

• **Plaintiff's account:**  Pettit stated that the highest rate of speed she traveled on the Parkway that day was "[n]ot high at all because it was very traffickey."  (Pettit Dep. 11:22–23.)

---

[1] There are other disputed facts, such as what lane the Parties were in, the amount of damage to Plaintiff's car, and the severity of Plaintiff's injuries, but those facts are not material to the determination of this motion.

3

She stated that she had stopped her car "within a minute" prior to the stop that led to the accident and that the "highest speed" she traveled between those two stops was "five" — presumably, five miles per hour.  (*See id.* at 13:2–25, 14:9–11.)

   • **Defendants' account:**  Defendant stated that the fastest rate of speed she traveled in the mile before the accident occurred was fifteen miles per hour and that the slowest rate of speed was a complete stop.  (*See* Nastasi Dep. 19:7–16.)  She also testified that she was traveling at a rate of fifteen miles per hour at the time of the accident.  (*See id.* at 7:15–17.)  Defendant also testified that she observed Plaintiff's vehicle traveling at a rate of approximately fifteen miles per hour before it "suddenly stopped" and the accident occurred.  (*See id.* at 13:3–6.)

### b. The Speed of the Stop

   • **Plaintiff's account:**  Plaintiff testified that the stop Pettit made right before the accident was "[g]radual."  (Bale Dep. 19:12–14.)  Pettit testified that she stopped Plaintiff's vehicle because of heavy traffic within one minute before the accident, that the vehicle then traveled "a couple of feet," stopped again, and was then rear-ended.  (Pettit Dep. 13:7–16, 14:3–11.)  Pettit further testified that she never applied the gas between the two stops and that approximately "[f]ive or six feet" separated her car from the rear of the vehicle in front of hers.  (Pettit Dep. 14:12–14, 15:10–13.)

   • **Defendants' account:**  Defendant testified that Plaintiff's "[c]ar suddenly stopped in front of" her, and that Defendant then "applied the brake."  (Nastasi Dep. 12:18–21, 17:11–12.)

### c. Time Between the Stop and Impact

   • **Plaintiff's account:**  Pettit testified that her vehicle had been stopped for a "few seconds" before the accident occurred.  (Pettit Dep. 12:21–25.)  When asked to specify, Pettit estimated that the vehicle had been stopped for "[t]hree seconds" before she was rear-ended.  (*Id.*

4

at 12:24–25.) Plaintiff likewise said that the vehicle had been stopped for "[t]hree seconds" before it was hit from behind. (Bale Dep. 21:13–16.)

  • **Defendants' account:** Defendant testified that one second elapsed between the time she saw Plaintiff's car "suddenly stop" and the time of the accident. (Nastasi Dep. 13:7–10.) In particular, Defendant testified that both vehicles were in motion when her cell phone, which was in the center console of her car, rang. (*See id.* at 16:20–25, 17:1–3.) Defendant stated she became "distracted" because the ring "just startled [her]." (*Id.* at 15:25, 16:2–7.) When her cell phone rang, Defendant's foot was "[s]lightly on the brake," "[b]ecause traffic was stop and go." (*Id.* at 20:5–10.) Defendant stated that, while she may have been distracted, she did not look down at her cell phone, but instead she took her eyes off the road and turned her head either to the left or to the right. (*See id.* at 16:6–16, 16:20–21.) From that moment until the time of impact, Defendant testified that she depressed the brake harder. (*See id.* at 20:2–15.) When Defendant "turned back that quick, [Plaintiff's vehicle] suddenly had stopped," and impact occurred "within that one second" "between the time [Defendant] heard [the] cell phone go off [and] the time [she] made contact." (*Id.* at 17:4–14.) Defendant stated that she did not see Plaintiff's vehicle come to a stop. (*See id.* at 17:15–17.)

    d. Force of the Contact

  • **Plaintiffs' account:** Plaintiff described the contact as "heavy," and Pettit described the contact as "jarring." (Bale Dep. 21:6–9; Pettit Dep. 19:11–14.) Pettit testified that she first observed the damage to Plaintiff's vehicle in Atlantic City, New Jersey, where she saw that "[t]he whole back tailgate was crushed in." (Pettit Dep. 20:11–19.) Plaintiff likewise claimed that "[t]he whole back tailgate was pushed in." (Bale Dep. 22:19–21, 23:10–17.) Neither party took photos of the damage. (*See Bale Dep.* 25:15–17.)

5

• **Defendants' account:**  Defendant described the contact as a "soft," "slight impact." (Nastasi Dep. 8:22–24, 12:20–21.)  Defendant described the damage to Plaintiff's car as "a dent in the hatchback part, about the size of a softball."  (Nastasi Dep. 9:6–11.)  Defendant's vehicle did not sustain any damage.  (*See id.* at 9:12–13.)

B. This Proceeding

On June 14, 2011, Plaintiff filed this Complaint against Defendants seeking $5,000,000 in damages.  Federal jurisdiction over this negligence action is based on diversity of citizenship, as Plaintiff and Defendants are residents of different states, and the amount in controversy exceeds the $75,000 threshold.  (*See* Compl. ¶¶ 1–4.)

On June 29, 2011, the Court ordered Plaintiff to show cause why this action should not be dismissed or transferred to the District of New Jersey because venue in New York was improper.  (Dkt. No. 2.)  Plaintiff responded two days later — but before the Court ruled on whether venue was proper, Defendants filed an answer that neither raised the issue of improper venue as an affirmative defense, nor expressly denied the venue allegations in the Complaint. (Dkt. No. 5.)  Thus, while venue may not technically be proper in the Southern District of New York, Defendants' failure to raise the issue of improper venue in a motion or in their answer effectively waived any venue-related challenge.  *See I Create Int'l, Inc. v. Mattel, Inc.*, No. 03-CV-3993, 2004 WL 1774250, at *2 (S.D.N.Y. Aug. 9, 2004) ("Unlike subject matter jurisdiction, venue is a 'personal privilege[]' that a party may waive." (quoting *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979)).  Accordingly, on September 7, 2011, the Court's Order to Show Cause was vacated.  (Dkt. No. 13.)

After conducting discovery, Plaintiff moved for partial summary judgment on the issue of liability.  The Parties have letter-briefed the motion.

II. Discussion

A. Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is only appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (*quoting* Fed. R. Civ. P. 56(c)). An issue of fact is "genuine" when "a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. A fact is material if it affects the outcome of the litigation under the relevant state's substantive law. *See id.* (stating that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment").

When evaluating a motion for summary judgment, the Court views all evidence in the light most favorable to the nonmoving party, and draws all reasonable inferences in the nonmoving party's favor. *See Tufariello v. Long Island R.R. Co.*, 458 F.3d 80, 85 (2d Cir. 2006). Importantly, at the summary judgment stage, the court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "If the evidence is such that, when viewed in the light most favorable to the nonmoving party, a reasonable fact finder could return a verdict for that party, then a genuine issue of material fact exists, and summary judgment is not warranted." *Magan v. Lufthansa German Airlines*, 339 F.3d 158, 161 (2d Cir. 2003).

The moving party has the initial burden of proving the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party "must come forward with evidence that would be

sufficient to support a jury verdict in his [or her] favor." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995); *see also Anderson*, 477 U.S. at 250 ("Rule 56(e) provides that, when a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'"). However, "[t]he motion 'will not be defeated merely . . . on the basis of conjecture or surmise.'" *Goenaga*, 51 F.3d at 18 (quoting *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991)); *see also McPherson v. N.Y. City Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006) ("[S]peculation alone is insufficient to defeat a motion for summary judgment."). In other words, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

"Summary judgment is difficult to obtain in negligence actions because whether conduct is 'negligent' is a factual determination in all but the most extreme situations." *Ortiz v. Rosner*, 817 F. Supp. 348, 350 (S.D.N.Y. 1993). But "[w]hile summary judgment for the plaintiff is unusual in a negligence action, the mere fact that a case involves a claim of negligence does not preclude a granting of summary judgment.'" *Polonia v. Dunphy*, No. 11-CV-1563, 2012 WL 2376467, at *3 (S.D.N.Y. June 21, 2012) (internal quotation marks omitted). That is, merely because "opposing parties assert competing versions of the same event is not in itself sufficient to preclude summary judgment." *Id.* (internal quotation marks omitted).

B. Choice of Law

Before addressing the merits of Plaintiff's motion, the Court must determine whether New York or New Jersey substantive tort law applies. The Parties jointly assert that New Jersey substantive law applies, (Dkt. No. 15 at 2; Dkt. No. 18 at 2), and the Court agrees.

In cases where federal jurisdiction is based on diversity of citizenship, a federal court must abide by the choice-of-law rules of the forum jurisdiction. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *see also MWL Brasil Rodas & Eixos LTDA v. K-IV Enterprises LLC*, 661 F. Supp. 2d 419, 428 (S.D.N.Y. 2009). Thus, here, New York choice-of-law principles apply. New York has adopted an "interest analysis" approach to choice-of-law questions, "intended to give controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised." *Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325, 337 (2d Cir. 2005) (internal quotation marks omitted). Still, the principle of *lex loci delicti* — that is, the idea that a court should apply the law of the state where the tort occurred — remains the general rule in tort cases "to be displaced only in extraordinary circumstances." *MWL Brasil Rodas & Eixos LTDA*, 661 F. Supp. 2d at 428. This is because "[w]here the issue involves standards of conduct, it is more than likely that it is the law of the place of the tort which will be controlling, but the disposition of other issues must turn, as does the issue of the standard of conduct itself, on the law of the jurisdiction which has the strongest interest in the resolution of the particular issue presented." *Babcock v. Jackson*, 191 N.E.2d 279, 285 (N.Y. 1963). Because there are no extraordinary circumstances here, New Jersey substantive tort law applies because the motor vehicle accident occurred in the state of New Jersey. *See Noreiga v. Lever Bros. Co.,* 671 F. Supp. 991, 995 (S.D.N.Y. 1987) (applying the New Jersey "rules of the road" — i.e., the New

Jersey "road and negligence laws" — to a motor vehicle accident case where "the accident occurred in New Jersey, and the negligence allegedly occurred in New Jersey at the time of the accident").[2]

C. The Issue of Liability

The key legal question in dispute is straightforward: does the mere fact that Defendant rear-ended Plaintiff, in and of itself, *automatically* warrant a finding of liability against her, or are there facts that Defendant can prove at trial that would allow the jury to find in her favor, at least in part? The Court concludes that, despite Plaintiff's contention, New Jersey has not adopted the bright-line liability rule for rear-end collisions proposed by Plaintiff, and so Defendant can defeat this summary judgment motion by placing in dispute certain facts that could lead a jury to find that Plaintiff is at least partially legally responsible for the accident.

And Defendant has done just that. While Plaintiff asserts that her vehicle came to a gradual stop, and remained stopped for three seconds before being hit in the rear, Defendant, by contrast, testified that Plaintiff's vehicle suddenly stopped in less than one second. If a jury were to accept Defendant's account, it could find in her favor, either by concluding that Pettit negligently stopped Plaintiff's vehicle and/or by inferring that Defendant was following at a reasonable distance, did all she could to avoid the accident, and so was not driving negligently. Because of this genuine dispute of material fact, partial summary judgment must be denied.

---

[2] There is one odd wrinkle in all of this: Despite correctly arguing that New Jersey law applies to this action, defense counsel's briefing inexplicably relies exclusively on New York caselaw when discussing the merits. Counsel's reliance on the caselaw of the incorrect jurisdiction is quite a valiant attempt to grab defeat from the jaws of victory, but the Court has analyzed the caselaw of New Jersey and, as explained below, concluded that Plaintiff is not entitled to summary judgment.

1. The New Jersey Law of Rear-End Collisions

In general, to prevail on a claim of negligence under New Jersey law, "a plaintiff must establish that [the] defendant breached a duty of reasonable care, which constituted a proximate cause of plaintiff's injuries." *Keith v. Truck Stops Corp. of Am.*, 909 F.2d 743, 745 (3d Cir. 1990) (citing *Brown v. Racquet Club of Bricktown*, 471 A.2d 25, 29 (N.J. 1984)); *see also Imable-Mayorga v. Labrie*, No. 09-CV-3567, 2011 WL 3203741, at *2 (D.N.J. July 27, 2011) (stating that "a plaintiff must show that: 1) the defendant owed a duty of care to the plaintiff; 2) the defendant breached said duty of care; and 3) the defendant's breach was the proximate cause of an injury to the plaintiff") (*citing Polzo v. Cnty. of Essex*, 960 A.2d 375, 384 (N.J. 2008)). New Jersey law imposes a duty on the driver of a vehicle "to use reasonable care in the control, management and operation of his or her vehicle." *Imable-Mayorga*, 2011 WL 3203741, at *2. Also, drivers may assume that other drivers "will exercise reasonable care and observe the standard of conduct required of [them] in the use of a highway." *Goldstone v. Tuers*, 189 N.J. Super. 167, 169 (App. Div. 1983).

A New Jersey law known as "the tailgating statute" provides that, on a highway like the Parkway, "[t]he driver of a vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard to the speed of the preceding vehicle and the traffic upon, and condition of, the highway." N.J. Stat. Ann. § 39:4–89.  In line with the statute, the New Jersey Supreme Court has held that "a following car in the same lane of traffic is obligated to maintain a reasonably safe distance behind the car ahead, having due regard to the speed of the preceding vehicle and the traffic upon the condition of the highway." *Dolson v. Anastasia*, 258 A.2d 706, 710 (N.J. 1969).  According to *Dolson*, violation of the tailgating statute is not

only evidence of negligence, but *is* negligence, because the statute "incorporates the common law standard into the motor vehicle law." *Id.*

*Dolson* is the Supreme Court of New Jersey's leading precedent regarding liability for rear-end collisions. That case involved a motor vehicle accident during which the defendant rear-ended the plaintiff while their vehicles were proceeding in the same line of traffic. *See id.* at 707. The plaintiff sued for negligence, and the jury returned a verdict in favor of the defendant. *See id.* The Supreme Court of New Jersey reversed, holding "beyond any doubt that the verdict was against the weight of the evidence so as to constitute a miscarriage of justice." *Id.* at 711. The court found the defendant's negligence "apparent from his own testimony," because the "[d]efendant, by his own words, was fully aware of the presence of plaintiff on the highway, knew she was slowing down or stopping, and saw the rear lights of her car blinking off and on." *Id.* at 710. The court also found that because "[t]he purpose of signals is to alert following cars," the defendant "was, or should have been, fully alerted to the fact that plaintiff was either going to stop or turn." *Id.* (internal quotation marks omitted). Importantly, the Supreme Court of New Jersey noted that the defendant "did not testify that [the plaintiff] came to a sudden stop so that [the defendant] could not apply his brakes in time to avoid the collision." *Id.* The court stated that "[a]ny such testimony of his belief [that plaintiff had stopped short], if the fact, would be admissible in explanation of his own conduct, although it is at least doubtful whether it alone would negate negligence." *Id.* However, "without such testimony no inference to that effect . . . is legitimate." *Id.*

Plaintiff here contends that "as a passenger in a vehicle stopped in traffic which was rear ended, [she] is entitled to summary judgment on the issue of liability." (Dkt. No. 16 at 3.) But the *Dolson* court's discussion of the missing testimony that *could have* supported a jury verdict

12

for the defendant makes clear that Plaintiff overstates the law. Indeed, since *Dolson*, several courts applying New Jersey law have held that legal liability is not automatically assumed against drivers who rear-end preceding vehicles. *See Sexton v. Boyz Farms, Inc.*, No. 09-CV-5829, 2011 WL 1362294, at *2 (D.N.J. Apr. 11, 2011) (holding that liability in a rear-end collision depends on the factual circumstances and that "the liability of the driver of the following vehicle may be lessened or eliminated by the contributory negligence of the driver of the lead vehicle"); *DiDiego v. Cave*, No. 06-CV-4806, 2008 WL 4279756, at *2 (D.N.J. Sept. 12, 2008) (noting that "*Dolson* does not stand for the proposition that any defendant who rear-ends another vehicle is 100% liable for the accident"); *Shnayder v. McGrail*, No. 03-CV-1959, 2005 WL 3527255, at *5 (D.N.J. Dec. 22, 2005) (denying plaintiff's cross-motion for partial summary judgment because "there are material facts in question regarding how the collision occurred and whether Plaintiffs were contributorily negligent"); *La Mandri v. Carr*, 372 A.2d 1327, 1329 (N.J. Super. Ct. App. Div. 1977) (stating that New Jersey's "tailgating statute" "was not intended to apply indiscriminatel[y] to any case where the front of one vehicle come into contact with the rear of another, irrespective of how the collision occurred"); *cf. Housel v. Theodoridis*, 715 A.2d 1025, 1026, 1028-29 (N.J. Super. Ct. App. Div. 1998) (finding summary judgment appropriate where defendant was cited for careless driving following the rear-end collision at issue, and defendant was deemed to have admitted essentially all of plaintiff's statements of material fact).[3]

---

[3] Plaintiff also cites *Lino v. Morris*, 171 A.2d 673 (N.J. Super. Ct. App. Div. 1961), in which Plaintiff says "the Appellate Division held that a defendant who strikes a vehicle from the rear is negligent as a matter of law," and which, according to Plaintiff, "is directly on-point and demonstrates that the instant motion should be granted." (Dkt. No. 16 at 4.) That too is likely an over-statement of the court's holding, but it might be possible to read that case that way. But even if that 1961 case did so hold, as the preceding discussion makes clear, such a bright-line

2. Application Here

Given the conflicting testimony here about whether Plaintiff suddenly stopped, and the conflicting inferences about how close Defendant was following, summary judgment is inappropriate. Indeed, the precise type of testimony missing in *Dolson* that could have supported a verdict for the defendant — that is, testimony that the plaintiff stopped short, which precipitated the accident — is present here. Under New Jersey law, therefore, a verdict for either Plaintiff or Defendants would be permissible based on the evidence so far produced.

Defendant testified that she informed the responding police officer that Plaintiff's vehicle suddenly stopped in front of her, that she applied the brake, and "just impact, slight impact." (Nastasi Dep. 12:18–21.) Defendant also testified that her foot was "[s]lightly on the brake" at the time her cell phone rang, and that she changed the manner in which she depressed the brake only by pressing it harder, until the time of impact. (*See id.* at 20:2–15.) And she testified that the time between when Pettit was still moving and when Pettit had stopped was less than one second. (*See id.* at 16:22–25, 17:1–17.) It is a reasonable inference from this testimony that Plaintiff's car did in fact stop short, and this inference must be drawn in Defendant's favor at the summary judgment stage. *See Maher v. N.J. Transit Rail Operations, Inc.*, 593 A.2d 750, 762 (N.J. 1991). Further, because Plaintiff and Pettit both testified that they were not even aware of the presence of the following car immediately preceding the accident, (*see* Bale Dep. 16:2–4;

---

rule of liability has not been the law in New Jersey over the last four decades. When sitting in diversity and resolving any ambiguity in state law, "'the job of the federal courts is carefully to predict how the highest court of the forum state would resolve the uncertainty or ambiguity'" under state law, *Kline v. E.I. DuPont de Nemours & Co.*, 15 F. Supp. 2d 299, 302 (W.D.N.Y. 1998) (quoting *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir. 1994)). To the extent that *Lino* creates any ambiguity on this question, it is clear from subsequent decisions that the New Jersey Supreme Court would not adopt such a bright-line rule today.

Pettit Dep. 15:18–20), there is a dispute of material fact as to whether Defendant was following at a reasonable distance that would have allowed her to stop in time if Pettit had made a reasonable stop.

To be sure, the account of Plaintiff and Pettit is different from that of Defendant; Plaintiff and Pettit both said that their car did *not* stop short and was stopped for a full three seconds before impact. (Pettit Dep. 12:21–25, Bale Dep. 21:13–16.) That may well be true. But without video of the accident, testimony from third-party witnesses, or any other independent evidence of what occurred, this is a paradigmatic case of "he said, she said" — or, more accurately, a case of "she said, she said, she said." And, where each side in such a case tells a story that is at least plausible and would allow a jury to find in its favor, it is for the jury to make the credibility determinations and apportion liability, and not for the court. *See Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010) (where a plaintiff's testimony was "not contradictory or rife with inconsistencies such that it was facially implausible," the evidence presents "a question of 'he said, she said,' on which the court cannot . . . take a side at the summary judgment stage"); *Wentworth v. Hedson*, 493 F. Supp. 2d 559, 568–69 (E.D.N.Y. 2007) (summary judgment is inappropriate where the evidence creates a "classic case of 'he said, she said'"). Thus, summary judgment is inappropriate.

This result is amply supported by New Jersey caselaw interpreting *Dolson* and addressing rear-end collisions. For example, in *DiDiego v. Cave*, the plaintiffs sued the defendant for injuries the plaintiffs suffered in a motor vehicle accident in which the defendant rear-ended the plaintiffs' vehicle. No. 06-CV-4806, 2008 WL 4279756 (D.N.J. Sept. 12, 2008). The jury returned a verdict finding the defendant 60% liable and the plaintiff 40% liable. *Id.* at *1. The plaintiff argued that the evidence did not support the jury's finding, and moved for judgment

15

notwithstanding the verdict and a new trial.  *See id.*  The plaintiff relied on *Dolson* to support her motion for judgment on liability, but the court rejected the plaintiffs' argument because *Dolson* "does not stand for the proposition that any defendant who rear-ends another vehicle is 100% liable for the accident."  *Id.* at *2.  As in *DiDiego*, here a jury should evaluate the witnesses' credibility and determine the fact-based question of fault.

*Jones v. Bennett*, 703 A.2d 1008 (N.J. Super. Ct. App. Div. 1998), also counsels in favor of denying summary judgment.  In *Jones*, the defendant "was driving well above the posted speed limit . . . when he hit a car that broke down in his lane of traffic."  *Id.* at 1013.  The court affirmed a verdict finding the defendant fully liable.  *Id.* at 1011, 1014  The court agreed with the trial judge's conclusion that, under *Dolson*, "[e]ven two to five seconds for a fully stopped vehicle . . . is plenty of time to avoid the vehicle . . . especially when there is no traffic in [the] other lane" and that, under the circumstances, defendant's "failure to maintain a reasonably safe distance behind the vehicle ahead resulting in a collision is negligence as a matter of law."  *Id.* at 1012.

*Jones* is doubly instructive for this case.  First, under the *Jones* analysis, the difference between coming to a stop in several seconds — "plenty of time," under *Jones* — and one second could make a dispositive legal difference.  Here, the pre-accident duration of Plaintiff's stop is especially relevant because, with traffic in other lanes, Defendant would likely not have been able to swerve.  As a result, the negligence determination depends in part on Plaintiff's stopping time.  Second, in *Jones*, key aspects of the negligence determination went to the jury.  *Id.*  In

particular, it was up to the jury to apportion fault between the drivers of the vehicles involved in the accident, based on the testimony and other evidence.[4]  So too here.

\* \* \*

Viewing the evidence in the light most favorable to Defendants and drawing all reasonable inferences in their favor, the Court is not able to conclude that a reasonable jury would necessarily return a verdict that Defendant was 100% at fault.  Rather, the deposition testimony of Plaintiff, Pettit, and Defendant Margaret Nastasi present genuine issues of material fact as to Defendants' liability, and the Court must therefore deny Plaintiff's motion for partial summary judgment on the issue of liability.[5]

---

[4] The fact that Defendant here admitted to being startled by her cell phone does not change the outcome.  Because New Jersey has a comparative negligence regime, a jury *could* find that Plaintiff was still partially at fault even if Defendant was too — and it is up to the jury, not this Court, to weigh the testimony and apportion liability.  *See Shnayder*, 2005 WL 3527255, at \*6 (in a read-end collision case applying New Jersey law, noting that, "[b]ecause there is [New Jersey] law that suggests that a person causing a rear-end collision could potentially have no liability or only partial liability, this Court cannot rule out the possibility that the variables Defendant illustrates could relieve Defendant of some if not all liability.  Additionally, there are material facts in question regarding how the collision occurred and whether Plaintiffs were contributorily negligent.  Therefore, Plaintiffs' Motion for Partial Summary Judgment shall be denied.").

[5] The theory of liability of co-Defendant Carlo Nastasi was not discussed at all in the summary judgment briefing.  Because summary judgment is denied, all Parties remain in the case.

### III. Conclusion

For the reasons stated herein, Plaintiff's motion for partial summary judgment, (Dkt. No. 16), is denied. The Clerk of Court is respectfully directed to terminate the pending motion.

SO ORDERED.

Dated:  White Plains, New York
        October 17, 2013

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

Service List

Michael A. Madonna, Esq.
Trolman, Glaser & Lichtman, P.C.
777 Third Avenue
35th Floor
New York, NY 10017
*Counsel for Plaintiff*

Mark A. Longo, Esq.
Longo & D'Apice
26 Court Street
Suite 1700
Brooklyn, NY 11242
*Counsel for Defendants*